## Stacey L. POINDEXTER  *v.*  Ryan M. POINDEXTER

04–230                                              203 S.W.3d 84

Supreme Court of Arkansas
Opinion delivered February 10, 2005

*The Farrar Law Firm,* by: *Michelle Strause,* for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.,* by: *Susan M. Coleman,* for appellee.

JIM HANNAH, Chief Justice. Appellant Stacey Poindexter appeals from a divorce decree entered by the Garland County Circuit Court that granted a motion by appellee Ryan Poindexter to change the parties' infant son's name from Seth Malcolm Poindexter to Seth Joseph Poindexter. Stacey argues that the circuit court erred in finding that the child's middle name should be changed because Ryan failed to show that it would be in the child's best interest to change his middle name. This case was certified to this court as an issue requiring clarification or development of the law; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5). We reverse and remand.

*Facts*

Stacey filed a complaint for divorce on February 19, 2003. In her complaint, she stated that she and Ryan had one child, Noah Elliot Poindexter, and that she was pregnant with another child due on March 21, 2003. In her complaint, Stacey requested, among other things, custody of the children and support. Subse-

quently, Stacey was awarded temporary custody of Noah, and Ryan was given alternating weekend visitation with Noah. The circuit court also ordered that Ryan begin paying child support for Noah and, beginning the Friday after the second child was born, Ryan was to pay child support for both children.

On March 25, 2003, Stacey gave birth to a second child, whom she named Seth Malcolm Poindexter. Subsequently, on June 22, 2003, Ryan filed a Petition to Establish Paternity, alleging that although the second child was born during the marriage, he might not be the child's father. The circuit court issued an order providing that Stacey, Ryan, and Seth were to submit to paternity testing. The results of the DNA test, filed with the circuit court on August 25, 2003, established that the probability that Ryan was the father of Seth was 99.995%.

At the final divorce hearing conducted on September 10, 2003, Ryan made his first request that the circuit court change the child's name from Seth Malcolm Poindexter to Ryan Joseph Poindexter. At the hearing, Ryan testified that prior to the birth of the child, he and Stacey had agreed that the child would be named Ryan Joseph Poindexter. Ryan related that the parties agreed that the child's middle name would be Joseph, in honor and remembrance of Ryan's deceased brother Mark Joseph Poindexter.

Stacey denied that she and Ryan had ever agreed to name the child Ryan Joseph Poindexter. In addition, she stated that the significance of the name Malcolm was in honor of her grandfather, who was also named Malcolm. Ryan admitted that he and Stacey had discussed other names for the child, including the name Seth Malcolm; however, he testified that he and Stacey had agreed on the name Ryan Joseph. Ryan stated that in the event the circuit court was inclined to change only one name, he would request that the circuit court change the child's middle name from Malcolm to Joseph.

At the hearing, Ryan denied Stacey's claims that he had physically abused her and their son Noah. Ryan admitted that he had only seen Seth twice, the day the child was born and the day of the paternity testing, and he acknowledged that Stacey had offered other times for visitation. However, Ryan testified that he declined to visit Seth because the visits would take place at Stacey's parent's home, where he would "get harassed" because Stacey's parents were "sarcastic" and "rude" to him.

At the conclusion of the hearing, the circuit court ordered that the child's name be changed from Seth Malcolm Poindexter to

Seth Joseph Poindexter. The circuit court made no finding concerning whether the name change would be in the best interest of the child.

### Name Change of a Minor

As an initial matter, we note that this court has not had occasion to address disputes concerning the first names[1] and middle names of minors. However, we are guided by our cases involving disputes over a child's surname. Ultimately, the controlling consideration in any change in status is whether the change is in the child's best interest. *See Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999) (*Huffman I*). In *Huffman I*, we held that when considering a petition to change the surname of a minor child, the circuit court should consider at the least the following factors to determine whether the surname change would be in the child's best interest:

> (1) the child's preference; (2) the effect of the change of the child's surname on the preservation or development of the child's relationship with each parent; (3) the length of time the child has borne a given name; (4) the degree of community respect associated with the present and proposed surnames; (5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (6) the existence of any parental misconduct or neglect.

*Huffman I*, 337 Ark. at 68, 987 S.W.2d at 274. Where a full inquiry is made by the circuit court of the factors set out above and a determination is made with due regard to the best interest of the child, the circuit court's decision will be upheld so long as it is not clearly erroneous. *Huffman I*, 337 Ark. at 69, 987 S.W.2d at 274.

We now turn to the circuit court's rationale for changing the child's middle name in the present case. At the hearing, subsequent to the circuit court's announcement that the child's middle name would be changed, Stacey's counsel made the following request:

> Your Honor, the plaintiff testified as the name Malcolm being a family name and her grandfather's name, and we just ask that the

---

[1] In this case, the child's first name is not at issue. Ryan does not appeal the circuit court's decision not to change the child's first name from Seth to Ryan.

Court reconsider allowing her to insert — add the name Joseph but leave Malcolm so that the child's name would be Seth Joseph — even put Joseph first Malcolm — Poindexter, so that the grandfather's name —

The circuit court denied the request, stating:

Actually, I had thought about that, as a hyphen type name, I really did think about that. Of course, I also thought about changing the child's name to David, because I've always liked that name. And I even — you all, I don't care if you tell your clients or not, I even said Michael or Susan would be — I mean, that's what we're talking about. . . .

. . . Yeah, it's important, I understand. You want the baby named after your grandpa. I can understand. You want the baby named after your brother. The two of you should be able to sit down and work that out, but you didn't and you couldn't. You left it to me, a complete stranger, to make that decision for your child. You left it to the people of the State of Arkansas. Is there a good reason? No, there's not. Malcolm, Joseph, David, you know. Yeah, what tipped the balance, to be honest with you, it's probably because of the deceased brother. I can't think of any other good particular reason to name a kid Joseph, other than that's my son's name, your son's name. And why I didn't do the hyphen, 'cause I thought of that. I thought that's the easy way out for me, you know, give him both names. I'll tell you what would happen. You want to know what would happen? I guarantee you, and you lawyers know this is true. You've done enough of this. One of 'em would call him Malcolm, and the other one would call him Joe. They would, because they're not going to rise above this, or are they?

\* \* \*

It is apparent that the circuit court failed to consider whether the name change was in the best interest of the child. Accordingly, we reverse and remand. In determining whether the name change is in the child's best interest, the circuit court should consider the factors established in *Huffman I.* We are mindful of the fact that some of the *Huffman I* factors refer specifically to the

child's surname.[2] When considering those factors, the circuit court should substitute the word "name" for the word "surname." Thus, in cases involving disputes over a child's first name or middle name, the circuit court, in determining the child's best interest, should consider at least the following factors:

> (1) the child's preference; (2) the effect of the change of the child's name on the preservation and development of the child's relationship with each parent; (3) the length of time the child has borne a given name; (4) the degree of community respect associated with the present and proposed names; (5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed name; and (6) the existence of any parental misconduct or neglect.

Reversed and remanded.

---

[2] We note that the court of appeals recently relied upon the *Huffman I* factors to address the issue of changing a child's *entire* name. *See Sheppard v. Speir*, 85 Ark. App. 481, 157 S.W.3d 583 (2004).