In re the Marriage of Amy M. **SWADNER**, Appellant,

v.

**John W. SWADNER, II, Appellee.**

**No. 32A01–0801–CV–1.**

Court of Appeals of Indiana.

Dec. 12, 2008.

Lilaberdia Batties, Batties & Associates, Indianapolis, IN, Attorney for Appellant.

Robert A. Wood, Kendall Wood Lowry & Kessinger, Danville, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Amy ("Mother") and John ("Father") Swadner's marriage was dissolved in Hendricks Superior Court. Mother appeals and raises several issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion when it ordered Mother to change E.S.S.'s middle name to "Wakefield";

II. Whether the court abused its discretion when it found Mother in contempt when she failed to change E.S.S.'s middle name;

III. Whether the trial court abused its discretion in ordering joint legal custody of the parties' children

and in issuing its parenting time order;

IV. Whether the trial court abused its discretion when it failed to include the work-related child care cost in its child support calculation;

V. Whether the trial court abused its discretion when it denied Mother's request to relocate the children to Fort Wayne; and

VI. Whether the trial court abused its direction in its division of the marital estate.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Mother and Father were married in 2001. During the course of the marriage, Mother gave birth to E.G.S. When the parties separated in January 2007, Mother was pregnant with the parties' second child, E.S.S., who was born in March 2007.

On January 24, 2007, the trial court issued an order appointing Paula Sauer as the Guardian Ad Litem ("the GAL"). The GAL issued preliminary recommendations for both E.G.S. and the parties' unborn child, which included joint legal custody of the children, parenting time for the children, and a middle name for the unborn child. The parties' agreed to adopt the GAL's preliminary recommendations, but reserved the right to argue against her recommendations at the final hearing.

On June 27, 2007, Mother filed a request for permission to relocate the children to Fort Wayne, Indiana. Father objected to the proposed relocation. In her final report, the GAL opined that it was not in the children's best interests to allow Mother to relocate them to Fort Wayne. Appellant's App. p. 38.

On September 28, 2007, the trial court issued its dissolution decree. The court denied Mother's request to relocate, and ordered the parties to share joint legal custody of the children. With regard to parenting time, Father was given two overnights per week with E.G.S. and every other weekend. Concerning E.S.S., Father was given weeknight visitation two nights per week and one twenty-four-hour period, until E.S.S.'s first birthday. On that date, the parenting time for E.S.S. was to be consistent with the parenting time for E.G.S. With regard to division of the marital estate, the parties stipulated to an equal division of the marital assets and debts.

Shortly thereafter, Father filed a motion to correct error asserting that the trial court had made a mathematical error with regard to division of the martial assets, which had the effect of giving more than fifty percent of the marital estate to Mother. On October 9, 2007, the trial court issued an amended decree, correcting its division of the marital assets. Mother filed a motion to correct error on November 2, 2007, arguing that the trial court erred with regard to its child custody, child support and parenting time orders. She also argued that the court erred when it denied her motion to relocate. Mother also argued that she was entitled to the portion of the marital assets awarded in the original dissolution decree.

In addition to responding to Mother's motion to correct error, on November 16, 2007, Father filed a petition for contempt citation. Father alleged that Mother was in contempt for failing to give E.S.S. the middle name "Wakefield" as recommended by the GAL.

On November 26, 2007, the trial court dismissed Mother's motion to correct error, in part, finding that it was untimely filed, and denied her motion in part.[1] Af-

---

1. Father moved to dismiss Mother's appeal as to any issues concerning child support, visita-

ter a hearing was held on Father's contempt petition, the trial court found Mother in contempt of court, ordered her to change E.S.S.'s middle name, and ordered her to pay $600 for Father's attorney fees. Mother now appeals. Additional facts will be provided as necessary.

## Standard of Review

■ The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, therefore

> we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence or assess the credibility of witnesses, but consider only the evidence most favorable to the judgment.

*Webb v. Webb*, 868 N.E.2d 589, 592 (Ind. Ct.App.2007) (citations omitted).

■ In addition to the standard of review under Trial Rule 52, our supreme court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind.1993). The rationale for this defer-

ence is that appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge ... did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002) (citation omitted).

## I. E.S.S.'s Middle Name

■ Mother argues that the trial court abused its discretion when it held her in contempt for failing to change E.S.S.'s middle name to "Wakefield." In addressing this issue, we must consider whether the court abused its discretion in ordering Mother to change E.S.S.'s middle name. First we observe that "[i]n deciding on a petition to *change* the name of a minor child, the court shall be guided by the best interest of the child rule under" Ind.Code § 31–17–2–8. Ind.Code § 34–28–2–4(d) (1999) (emphasis added); *see also In re the Name Change of H.M.C. v. Curtis*, 876 N.E.2d 805, 807 (Ind.Ct.App. 2007), *trans. denied.*

■ Our research has not revealed any Indiana case addressing a dispute concerning the first or middle name of a minor child.[2] However, on numerous occasions, our courts have considered petitions to change a child's last name under the best interests standard. *See e.g. In re Paternity of J.C.*, 819 N.E.2d 525, 527 (Ind.Ct.

tion, and custody. Father argued that Mother was required to file a motion to correct error on or before October 29, 2007 to contest the trial court's findings concerning those issues in the dissolution decree because Father did not challenge the court's resolution of those issues in his Motion to Correct Error. Consequently, the court's findings on those issues were not modified in the court's October 9, 2007 amended decree. Therefore, Father claimed that Mother did not timely raise those issues on appeal. Our court denied Father's

Motion to Dismiss Appeal, and we decline to revisit that ruling. Accordingly, we will address all issues Mother has raised in this appeal.

2. However, courts of other states that have addressed changes to first or middle names have generally considered whether the name change would be in the child's best interest. *See e.g. Poindexter v. Poindexter*, 360 Ark. 538, 203 S.W.3d 84, 86–87 (2005).

App.2004). Consistent with those cases and Indiana Code section 34–28–2–4(d), we conclude that trial courts are required to consider the best interests of the child in ruling on a petition to change a minor child's first or middle name. Finally, we observe that a father and mother enjoy equal rights with regard to naming their child. *See Tibbitts v. Warren,* 668 N.E.2d 1266, 1267 (Ind.Ct.App.1996), *trans. denied.*

In this case, there was no finding indicating whether the trial court considered E.S.S.'s best interests when it held Mother in contempt for failing to change his middle name to "Wakefield."[3] For this reason, we remand this case to the trial court to consider whether changing E.S.S.'s middle name to "Wakefield" is in his best interests.[4]

## II. Contempt Finding

▮▮▮▮▮ Indiana Code § 34–47–3–1 provides in relevant part: "A person who is guilty of any willful disobedience of any process, or any order lawfully issued: (1) by any court of record ... is guilty of an indirect contempt of the court that issued the process or order." Consistent with this statutory provision, our courts have long held that "[i]ndirect contempt is the willful disobedience of any lawfully entered court order of which the offender has notice." *City of Gary v. Major,* 822 N.E.2d 165, 169 (Ind.2005) (citations omitted).

"[C]ontempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." *Id.*

Prior to E.S.S.'s birth, the GAL recommended that Mother choose the middle name "Wakefield" if the unborn child was a boy. "Wakefield" was Fathers middle name and Father was the fifth consecutive generation in his family to bear "Wakefield" as his middle name.

▮▮▮▮▮ Mother was later held in contempt for failing to change E.S.S.'s middle name to "Wakefield."[5] Mother first argues that the trial court lacked jurisdiction to order her to use the middle name "Wakefield" for her unborn child. Indiana Trial Rule 17(C) grants authority to trial courts to "appoint a guardian ad litem or an attorney for persons who ... are not yet born or in being[.]" The trial court therefore had the authority to appoint a GAL for E.S.S. for the purpose of representing and protecting his best interests. *See* Ind.Code § 31–9–2–50 (1998); § 31–15–6–3 (1998). We cannot conclude that the GAL exceeded her authority when, in her preliminary recommendations, she recommended, "[i]f the baby is a boy, the child's middle name should be Wakefield, as [Father] has requested." Appellants App. p. 24.

However, we cannot conclude that Mother was permanently bound by the GAL's

---

3. Perhaps a better resolution to this acrimonious issue would have been to order Mother to simply add Wakefield as a middle name. Although not customary, it is not uncommon for individuals to bear two middle names.

4. As is discussed below, E.S.S. was not yet born on the date the GAL recommended the middle name "Wakefield." However, that recommendation was not permanently binding on Mother. For this reason, we treat the trial court's decision to order Mother to change E.S.S.'s middle name to Wakefield as a ruling on a petition to change his middle

name. This is essentially the relief Father requested in his Petition for Contempt.

5. As we concluded above, the trial court erred when it found Mother in contempt for failing to change E.S.S.'s middle name without considering whether the change was in his best interests. However, a party may be held in contempt for failing to comply with an erroneous order. "The only remedy from an erroneous order is appeal and disobedience thereto is contempt." *See City of Gary,* 822 N.E.2d at 169–70.

recommendation concerning E.S.S.'s middle name. Importantly, the parties agreed to adopt the GAL's preliminary recommendations, but both parties reserved the right to argue against those preliminary recommendations at the final hearing. Moreover, the purpose of the preliminary recommendations were to address the issues of custody and parenting time during the pending dissolution proceedings.

Prior to the final hearing, Father filed a petition for contempt of court alleging that Mother had failed to give E.S.S. the middle name "Wakefield." During the hearing, Mother testified that she did not believe that she was bound by the GAL's preliminary recommendation regarding E.S.S.'s middle name. Tr. p. 36. In the final decree, the court stated: "Regarding the Contempt of Court Petition for failure to comply with the preliminary order, the Court admonishes Wife for her actions and instructs her that she must comply with all Court orders or seek a modification through the Court." Appellants App. p. 11. The court later found Mother in contempt of court for failing to give the middle name "Wakefield" to E.S.S.

■ The trial court was required to find "willful disobedience" of its orders to hold Mother in contempt for violation of those orders. *See Bowyer v. Ind. Dep't. of Natural Res.*, 798 N.E.2d 912, 918 (Ind.Ct. App.2003).

The order allegedly violated must have been so clear and certain that there could be no question as to what a party must do, or not do, and so there could be no question regarding when the order is violated. "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith.

*Id.* (citations omitted).

The record before us discloses no such explicit order concerning E.S.S.'s middle name. The court-approved agreed entry adopting the GAL's preliminary recommendations was only in effect until the final order issued, and the parties both agreed that they could argue against those recommendations at the final hearing. Because Mother was not bound by the GAL's recommendation, the trial court could not hold her in contempt for failing to change E.S.S.'s middle name. Moreover, in its final order, the trial court could have explicitly ordered Mother to change E.S.S.'s middle name to Wakefield, but did not do so. Prior to the contempt proceedings, the trial court never issued an order unmistakably requiring Mother to change E.S.S.'s middle name. Accordingly, we conclude that the trial court abused its discretion when it found Mother in contempt of court.

### III. Joint Custody and Parenting Time

■ Mother argues that she should have been awarded sole custody of the children because communication between Mother and Father is "poor" and the parties are unable to agree on where E.G.S. should attend school. Br. of Appellant at 16. Mother also asserts that the trial court abused its discretion in adopting the GAL's parenting time recommendations, which deviated from the Indiana Parenting Time Guidelines.

■ Determinations regarding child custody fall within the trial court's sound discretion. *Francies v. Francies,* 759 N.E.2d 1106, 1115–16 (Ind.Ct.App.2001), *trans. denied.* We will affirm unless we determine that the trial court abused this discretion. *Id.*

The award of joint legal custody is governed by Indiana Code section 31–17–2–15, which states:

In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

▆▆▆▆ Therefore, trial courts must consider "whether the parents have the ability to work together for the best interests of their children." *Arms v. Arms,* 803 N.E.2d 1201, 1210 (Ind.Ct.App.2004). We are reluctant to reverse a trial court's grant of joint legal custody. *Walker v. Walker,* 539 N.E.2d 509, 512 (Ind.Ct.App. 1989). However, we will do so when the evidence indicates "a clear abuse of trial court discretion in that the joint custody award constitutes an imposition of an intolerable situation upon two persons who have made child rearing a battleground." *Aylward v. Aylward,* 592 N.E.2d 1247, 1251 (Ind.Ct.App.1992).

▆▆▆▆ The fact that both parents may be suitable and capable legal custodians of their children does not make an award of joint custody appropriate. "Even two parents who are exceptional on an individual basis when it comes to raising their children should not be granted, or allowed to maintain, joint legal custody over the children if it has been demonstrated … that those parents cannot work and communicate together to raise the children." *Carmichael v. Siegel,* 754 N.E.2d 619, 636 (Ind.Ct.App.2001). Indeed, to award joint legal custody to individually capable parents who cannot work together "is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Aylward,* 592 N.E.2d at 1252.

We cannot conclude that the trial court abused its discretion when it awarded joint legal custody of the children to Mother and Father. While it is true that Mother and Father disagree on whether E.G.S. should attend a private Christian school or public school, and about other matters as well, the parties have demonstrated their general ability to communicate and work together to raise their children. Each party acknowledges the other's love for their children and the fitness of each parent to care for the children. Moreover, the GAL recommended joint custody and parenting time in excess of the minimum established by the Parenting Time Guidelines. We cannot conclude that the trial court abused its discretion when it determined that the parties have the ability to work together in raising their children, and that joint custody was appropriate.

■ Concerning the deviation from the parenting time guidelines, the only specific deviation Mother cites is awarding Father parenting time on every traditional Monday holiday. Beyond the fact that Mother is the childrens primary caregiver, Mother has not presented any specific argument in support of her claim that the trial court abused its discretion in deviating from the Parenting Guidelines. Therefore, she has not established any reversible error on this issue.

## IV. Work Related Child Care Cost

■ Next, Mother argues that the trial court abused its discretion when it failed to include the work related child care cost in the child support calculation. Indiana Child Support Guideline 3(E)(1) provides in relevant part:

> Child care costs incurred due to employment or job search of either parent, should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the custodial parent works or actively seeks employment. Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children.

In its child support calculation, the trial court determined that Husband's income represents approximately 60% of the parties' income. The parties submitted child support worksheets without work related child care expenses computed therein. Therefore, the trial court ordered Husband to pay 60% and Mother to pay 40% of all work related child care expenses.

Because Mother failed to include the work related child care expense on her worksheet, she has waived this issue for review. *See Butterfield v. Constantine,* 864 N.E.2d 414, 417 (Ind.Ct.App.2007) (Husbands failure to produce a worksheet or any evidence, his failure to object to

Mother's lack of a worksheet, and his tacit agreement to proceed without a verified worksheet constituted a waiver of his right to appeal the trial court's order.) Waiver notwithstanding, we conclude that the trial court acted within its discretion when it apportioned the child care expenses between the parties in the manner discussed above.

## V. Mother's Petition to Relocate

■ Mother also argues that the trial court abused its discretion when it denied her request to relocate the children to Fort Wayne. The trial court denied Mother's request upon finding, "[t]he best interest of the children is that they not be moved several hours away from their father[.]" Appellant's App. p. 8.

In 2006, our General Assembly added to the Family Law Title of the Indiana Code an entire chapter concerning the relocation of a custodial parent. *See* Ind.Code ch. 31–17–2.2 (Supp.2007). This new chapter was recently summarized by our Supreme Court in *Baxendale v. Raich,* 878 N.E.2d 1252 (Ind.2008):

> "Relocation" is "a change in the primary residence of an individual for a period of at least sixty (60) days," and no longer requires a move of 100 miles or out of state. *Id.* § 31–9–2–107.7. A "relocating individual" is someone who "has or is seeking: (1) custody of a child; or (2) parenting time with a child; and intends to move the individuals principal residence." *Id.* § 31–9–2–107.5. A "nonrelocating parent" is someone "who has, or is seeking: (1) custody of the child; or (2) parenting time with the child; and does not intend to move the individuals principal residence." *Id.* § 31–9–2–84.7. Upon motion of either parent, the court must hold a hearing to review and modify custody "if appropriate." *Id.* § 31–17–2.2–1(b). In determining whether to modify a custody order, the court is

directed to consider several additional factors that are set out in section 31–17–2.2–1(b) and are specific to relocation. In general, the court must consider the financial impact of relocation on the affected parties and the motivation for the relocation in addition to the effects on the child, parents, and others identified in Section 8 as relevant to every change of custody.

*Id.* at 1255–56 (footnotes omitted).

 Under Chapter 2.2, there are two ways to object to a proposed relocation: a motion to modify a custody order under Indiana Code section 31–17–2.2–1(b), and a motion to prevent the relocation of a child under Indiana Code section 31–17–2.2–5(a). *See Baxendale,* 878 N.E.2d at 1256 n. 5. If the non-relocating parent does not file a motion to prevent relocation, then the relocating parent with custody of the child may relocate. *Id.* If the non-relocating parent does file a motion to prevent relocation, then the relocating parent must first prove that "the proposed relocation is made in good faith and for a legitimate reason." *Id.* (quoting I.C. § 31–17–2.2–5(c)). If this burden is met, then the non-relocating parent must prove that "the proposed relocation is not in the best interests of the child." *Id.* (quoting I.C. § 31–17–2.2–5(d)). Under either a motion to prevent relocation or a motion to modify custody, if the relocation is made in good faith "both analyses ultimately turn on the best interests of the child." *Id.*

Finally, the court shall take into account the following factors in considering the proposed relocation:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individuals contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind.Code § 31–17–2.2–1(b).

Mother established that the proposed relocation was made in good faith and for a legitimate reason. Mother desired to move from Plainfield to Fort Wayne because she planned to reside with her parents. Her parents were willing to watch the children while she worked. She also had an offer for employment. Although her pay would have been less than her rate of pay at her current job, Mother would have had minimal living and child care expenses. Mother intended to reside with her parents until she had paid off all of her debts.

However, Father presented evidence that it would not be in the children's best interests to allow Mother to relocate the children to Fort Wayne. The GAL testified that in her opinion, Mother should not be allowed to relocate the children. The GAL stated that Mother's "refusal to allow [Father] any overnight parenting time with [E.S.S.] as well as her alleged failure to allow [Father] telephone access to

[E.G.S.] is a good predictor of what he can expect in the future as far as [Mother's] willingness to foster and encourage [Father's] role in the kids [sic] lives." Tr. p. 17. She also testified that Mother's conduct "has been to thwart" Father's parenting time with E.S.S. Tr. p. 18.

This evidence supports the trial court's determination that relocation was not in the children's best interests and we cannot conclude that the trial court abused its discretion in denying Mother's petition to relocate. While we acknowledge that Mother presented evidence that would also support the conclusion that relocation was in the children's best interests, we will not reweigh the conflicting evidence and cannot say that the trial court erred in reaching the conclusion that it did.

### VI. Division of the Marital Estate

■■■ Finally, Mother argues that although "the parties stipulated to an equal division of the marital estate, the trial court, in its Amended Dissolution Decree ... awarded Mother 69% of the marital debt and 31% of the marital assets, clearly an unequal division of the marital pot, without explanation." Br. of Appellant at 13.

■■■ Pursuant to Indiana Code section 31–15–7–5, the trial court is required to divide the marital estate in a just and reasonable manner, with an equal division being presumed just and reasonable. The party challenging a trial court's division of the marital estate must overcome a strong presumption that it considered and complied with the applicable statute. *Frazier v. Frazier*, 737 N.E.2d 1220, 1223 (Ind.Ct. App.2000). The presumption is one of the strongest presumptions applicable to our consideration on appeal. *Bizik v. Bizik*, 753 N.E.2d 762, 766 (Ind.Ct.App.2001), *trans. denied.*

■■■ Marital property includes property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation, or acquired by their joint efforts. *See* Ind.Code § 31–15–7–4 (1998). The trial court's disposition of the marital estate is to be considered as a whole, not item by item. *Eye v. Eye*, 849 N.E.2d 698, 701 (Ind.Ct.App.2006). Moreover,

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

When ordering an unequal division, the trial court must consider all of the factors

set out in the statute. *Eye*, 849 N.E.2d at 701; I.C. § 31–15–7–4.

Father owned the marital residence and had established his 401(k) before the parties were married. In dividing the marital estate, the trial court equally divided the increase in the equity in the marital residence from the date of the marriage to the date of separation and the increase in value in the 401(k) between those dates. In its division of the marital property, the trial court should have, but failed to, consider the total equity in the marital residence and the full amount of Father's 401(k). *See* I.C. § 31–15–7–4.

Father argues that Mother stipulated to using the coverture value of the marital residence and Father's 401(k). Our review of the record does not support Father's argument. Mother did stipulate to the values of the residence and 401(k) on the date of their marriage. However, there is no stipulation indicating that the parties agreed only to include the increase in value of those assets during the marriage. The stipulations merely provide, "The parties agree to divide the marital estate and debt equally." Appellant's App. p. 43. Accordingly, we conclude that the trial court abused its discretion when it failed to include the total equity in the martial residence and entire value of the 401(k) in its calculation of the marital estate. Therefore, we remand with instructions to the trial court to either recalculate the parties' marital estate following the statutory presumption of an equal division of the marital estate or to set forth its rationale for deviating from that presumption.

### Conclusion

The trial court abused its discretion when it ordered Mother to change E.S.S.'s middle name without considering whether the name change was in his best interests. In addition, the trial court abused its discretion when it held Mother in contempt of court for failing to change E.S.S.'s middle name. Moreover, Mother failed to establish reversible error with regard to joint custody, parenting time, the allocation of the childcare expense, and the denial of her petition to relocate. Finally, the trial court abused its discretion when it failed to include the total equity in the marital residence and the entire value of Father's 401(k) in its calculation and division of the marital estate. Accordingly, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

BROWN, J., concurs.

BAKER, C.J., dissents with opinion.

BAKER, Chief Judge, dissenting in part.

I respectfully dissent from the majority's decision to affirm the portion of the trial court's order awarding joint legal custody to the parties herein. Although we are reluctant to reverse a trial court's grant of joint legal custody, we will do so when the evidence indicates "a clear abuse of trial court discretion in that the joint custody award constitutes an imposition of an intolerable situation upon two persons who have made child rearing a battleground." *Aylward v. Aylward*, 592 N.E.2d 1247, 1251 (Ind.Ct.App.1992). That both parents may be suitable and capable legal custodians of their children does not end the inquiry:

> [e]ven two parents who are exceptional on an individual basis when it comes to raising their children should not be granted, or allowed to maintain, joint legal custody over the children if it has been demonstrated ... that those parents cannot work and communicate together to raise the children.

*Carmichael v. Siegel,* 754 N.E.2d 619, 636 (Ind.Ct.App.2001). To award joint legal custody to parents who are unable to cooperate "is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Aylward,* 592 N.E.2d at 1252.

Here, notwithstanding Mother's and Father's respective acknowledgement of "the others love for their children and the fitness of each parent to care for the children," Op. p. 974, they are unable to agree on fundamental issues such as their child's middle name, their children's education, and where the children should live. Given their inability to communicate about and compromise on such basic decisions, I do not believe that joint legal custody will be workable or in the children's best interests. *See also Aylward,* 592 N.E.2d at 1251 (observing that we are reluctant to affirm a trial court's order of joint legal custody when one of the parties objects thereto). Therefore, I would reverse the trial court in that regard and remand with instructions to make a new custody determination. In all other respects, I concur with the majority opinion.