Cathy WEBB, Appellant–Respondent,

v.

Terry WEBB, Appellee–Petitioner.

No. 49A04–0612–CV–700.

Court of Appeals of Indiana.

June 26, 2007.

stead assumed that citizens would remain civilly and criminally responsible for abuse of the right." *Id.* at 968.

Dylan A. Vigh, Dulik & Vigh, LLC, Indianapolis, IN, Attorney for Appellant.

Terry R. Curry, Law Office of Terry R. Curry, Indianapolis, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Cathy Webb (Mother), appeals the trial court's Child Custody Modification Order awarding sole legal and physical custody over the minor children, T.W. and C.W., to Appellee–Petitioner, Terry Webb (Father).

We affirm.

### ISSUE

Mother raises one issue on appeal which we restate as follows: Whether the trial

court properly granted legal and physical custody of T.W. and C.W. to Father.

## FACTS AND PROCEDURAL HISTORY

Father and Mother were married on July 2, 1988. Two children were born of the marriage: T.W., born on September 7, 1992 and C.W., born on September 17, 1994. On April 25, 2003, Father filed a Petition for Dissolution of Marriage. On March 22, 2004, the trial court issued the Decree of Dissolution, awarding the parties joint legal and physical custody over the minor children, with Mother being the primary caregiver. Father was granted visitation every other weekend plus an additional overnight each week.

On January 31, 2006, Father filed a Verified Petition to Modify child custody alleging that Mother failed to provide the requisite care with respect to the children's respective educational needs and behavioral disorders. On October 23, 2006, the trial court heard evidence on Father's petition. Thereafter, on October 25, 2006, the trial court issued its Findings of Fact and Conclusions of Law, which state, in pertinent part:

1. The parties have been the joint legal custodians of the minor children, [C.W.], age 12, and [T.W.], age 14, since the entry of the Decree of Dissolution of Marriage.

2. There has been a substantial change in circumstances since the entry of the Decree. The children of this marriage have failed to progress academically. Since the entry of the Decree, both of the children have failed the ISTEP and have received failing grades in their regular academic classes intermittently. [T.W.] has been held back and repeated a grade. Both of the children are in significant danger of not completing high school if no changes take place.

3. Father identified learning difficulties that were not being properly addressed by the school. Mother thwarted Father's efforts to have the children tested. Mother's interference with the testing program appears to be solely due to Mother's resentment for the children's step-mother, who is an educational consultant at the children's school. The children were ultimately tested by the school, over Mother's objections, and found to be learning disabled and entitled to individualized educational plans (IEP's). The school is now providing additional resources to the children. Continued monitoring of the children's progress and advocacy for them with the school when progress is not made is critical for the children's success and welfare.

4. Father identified mental health issues with [C.W.] including depression. Again over Mother's objections, [C.W.] has been evaluated and has need for therapy. Gallahue Mental Health Center has been proposed to provide the services that [C.W.] needs. Mother does not want to take the child to Gallahue without having another option presented for treatment. Mother's position would be reasonable if Mother had made any effort to investigate [C.W.'s] needs and what services are available elsewhere in the community. However, Mother has no information regarding Gallahue Mental Health Center nor has she made any attempt to investigate other alternative providers. Mother's objection, again, is for the purpose of thwarting treatment suggested by Father and not based upon any facts. Unless custody of the children is changed to Father, [ ] Mother will continue to interfere with accessing the community and school resources that the children need and are entitled to.

5. Father shall have sole legal custody of the minor children. Mother shall have parenting time no less frequent than provided under the Indiana Parenting Time Guidelines. Mother's Wednesday nights with the children shall be overnights. Mother shall be responsible to make certain the children have completed their homework while in her care.

6. Father shall have sole authority and responsibility for the children's education. However, Father is ordered to keep Mother informed of any and all changes in services, programs, and activities offered to the children. Mother shall be kept fully informed of all school activities. Father shall make sure Mother is informed of all school activities and conferences and Mother shall be invited to attend all parent conferences with schools, mental health providers and doctors. The children's stepmother is a significant adult in the children's lives. While she is absolutely no substitute for the children's [M]other, she will have an influence upon the children and she will be called upon to assist her husband in the tasks of child rearing. Therefore, the step-mother may be included in school conferences and other meetings pertaining to the children.

(Appellant's App. pp. 5–7).

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Mother contends that the trial court erred in modifying the joint legal and physical custody arrangement by awarding legal and physical custody over the minor children to Father. Specifically, Mother asserts that the evidence presented at trial was insufficient to prove that (1) the proposed custody modification would be in the children's best interest and (2) a substantial change in circumstances has occurred, warranting the custody modification.

■■■ In general, we review custody modifications for an abuse of discretion, with a preference for granting latitude and deference to our trial courts in family law matters. *Leisure v. Wheeler*, 828 N.E.2d 409, 414 (Ind.Ct.App.2005) (quoting *Apter v. Ross*, 781 N.E.2d 744, 757 (Ind.Ct.App. 2003), *trans. denied*). We will not reverse unless the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Truelove v. Truelove*, 855 N.E.2d 311, 314 (Ind.Ct.App. 2006).

■■■ Additionally, Mother is appealing from a decision in which the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. Thus, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Staresnick v. Staresnick*, 830 N.E.2d 127, 131 (Ind.Ct.App.2005), *reh'g denied*. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence or assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

■■■ In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody arrangement should be altered. *Leisure*, 828 N.E.2d at 414. Ordinarily, a trial court may not modify a child custody order unless (1) the modification is in the

best interests of the child, and (2) there is a substantial change in one or more of the facts a court may consider under I.C. § 31–17–2–8. *See* I.C. § 31–17–2–21; *id.* The factors listed in I.C. § 31–17–2–8 are the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling;

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

■ A review of the trial court's Order clarifies that here, the custody modification is based on a substantial change in the children's academic performance, resulting in a determination that it would be in their best interest to award sole custody to Father. However, Mother challenges the trial court's Order as being devoid of any showing that its modification was evaluated in light of the best interest of the children and based on a substantial change in circumstances. We disagree.

Evidence established at trial indicates that the children are students at Stoneybrook Middle School in Warren Township. Both T.W. and C.W. experienced behavior problems, exhibited poor grades, and failed the ISTEP. When Father sought testing through the school to address the children's problems, Mother initially resisted such testing. After receiving the results of the tests, Father actively worked with the school to implement the necessary resources and services, including an individualized educational plan for each child. He testified at trial that even though the children's grades have improved since the special programs were put in place, "they are [still] two to three years behind in a lot of their schoolwork." (Transcript p. 18). One of the problems preventing the children's educational progress is the failure to complete or turn in homework when they are in their Mother's care. On the other hand, Father testified that he and his wife, a child behavior consultant for Warren Township Schools, regularly assist the children with their homework, resulting in an improvement of their grades.

Additionally, Father attempted to address C.W.'s behavioral problems by seeking testing at the Gallahue Mental Health Center (Gallahue). Again, Mother resisted this testing. At trial, she testified that she might agree to counseling for C.W. if "there is another counselor that [ ] could [be agreed] upon besides Gallahue." (Tr. p. 53). However, responding to the trial court's questions, she admitted to not having any specific problems with Gallahue, rather she just wants to explore her options. At the same time, however, she conceded to not having investigated Gallahue, and to not having searched for alternative options.

The investigation from the Domestic Relations Counseling Bureau, conducted at

**594**

the behest of the trial court, concluded that:

> Although [Mother] has made some efforts to assist [T.W.] and [C.W.] with academic challenges, her efforts appear to have been minimally effective and she appears to take more of a reactive versus proactive approach. [Father] appears more proactive in his desire to assist the children in reaching their potential, both academically as well as with daily living skills. [Father's wife] also possessed skills, which may be beneficial in assisting the children. [Father] also appears to be more aware of [C.W.'s] mental health needs, and to be more willing to address them. [T.W.] and [C.W.] would both benefit from undergoing an assessment by a mental health professional to determine if therapy would be beneficial to them.

(Petitioner's Exh. 2, p. 9).

In sum, the record shows that although the children's academic progress has improved since Father instigated the testing, they still have a long way ahead of them in overcoming several years of educational delays. Nevertheless, Father is very proactive and determined to make decisions in the children's best interest. Thus, viewing the evidence in light of our deferential standard of review, we conclude that due to Father's insistence on educational testing a substantial change in the children's school environment occurred. Like the trial court, we find it in the children's best interest to modify custody to Father who is sensitive to their educational needs and who will actively aid them to reach their full academic potential. Therefore, we affirm the trial court's Order.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly modified custody by granting legal and physical custody of T.W. and C.W. to Father.

Affirmed.

NAJAM, J., and BARNES, J., concur.