**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2012, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREA R. TREVINO**
Bobilya Law Group LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**KEVIN L. LIKES**
Likes Law Office
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF K.S., | ) | |
| | ) | |
| J.S. (Father), | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 17A03-1109-JP-438 |
| | ) | |
| M.M. (Mother), | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |
| | ) | |

APPEAL FROM THE DEKALB CIRCUIT COURT
The Honorable Kirk D. Carpenter, Judge
Cause No. 17C01-0903-JP-36

**April 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

M.M. ("Mother") and J.S. ("Father") had joint legal custody and equal parenting time with their son, K.S. Following a period of disagreement between them, including the facts that K.S. was approaching school age and Mother moved, Father filed petitions for modification of custody and civil contempt of Mother. The trial court modified primary physical custody to Mother and continued joint legal custody, but the court did not hold Mother in contempt or explicitly rule on Father's contempt petition. As to physical custody, we conclude that the trial court failed to consider the factors regarding relocation of a custodial parent and therefore remand is necessary. As to legal custody, we conclude that the trial court did not err in continuing joint legal custody. Finally, as to contempt, we conclude that the trial court failed to explicitly rule on at least part of Father's contempt petition. We therefore reverse in part, affirm in part, and remand.

**Facts and Procedural History**

K.S. was born in March 2007 in Auburn, DeKalb County, Indiana. Mother and Father were not married at the time of K.S.'s birth, and they separated shortly thereafter. In 2009, Mother filed a petition to establish Father's paternity. Father responded with a petition to establish custody and parenting time. At the initial hearing, Father admitted K.S.'s paternity, and the parties agreed to temporarily continue their joint legal-custody and equal parenting-time arrangement by which each parent cared for the child every other week. Appellant's App. p. 14. On July 23, 2009, the trial court issued an order establishing Father's paternity, temporarily continuing their joint legal-custody and equal parenting-time arrangement, and referring the parties to mediation. *Id.* at 13-14.

2

From September to December 2009, Father was the primary caregiver, and Mother saw K.S. every other weekend. *Id.* at 21. This arrangement arose "because of the mother's schedule and inability to properly care for the child on an every-other-week basis." *Id.* at 21. In December 2009, however, the parties resumed every-other-week care of K.S.

Following a final hearing on Father's petition to establish custody and parenting time, on July 15, 2010, the trial court awarded joint legal custody and equal parenting time. *Id.* at 25 ("The Court finds and orders that continued joint legal custody and physical custody of the child should continue as has been previously temporarily ordered as being in the best interests of the child."). As part of this order, the trial court acknowledged that both parties lived in Fort Wayne (Allen County) but that "[M]other's intentions are to move to Auburn, Indiana [(DeKalb County)]." *Id.* at 22. The court noted that "both the parents agree that because the parties live in different school districts, and because of the need for stability and consistency with the minor child beginning preschool and school, the visitation structure needed to change." *Id.* at 24. The trial court ordered Father to pay $14.00 per week in child support and Mother to pay the first $477.00 of K.S.'s health-care expenses.

On November 1, 2010, Mother informed Father by letter that she had moved from Fort Wayne to Auburn at the end of October 2010. *Id.* at 52. Around this time Father began seeking a prekindergarten program in Fort Wayne for K.S., who was then three years old. The parties, however, were unable to agree on a program. As a result of the parties' failure to agree on a program, *id.* at 55-57, Father filed a petition to modify

custody and parenting time or, in the alternative, to award him primary physical custody so that K.S. could attend a school in Fort Wayne. *Id.* at 54. Father requested primary physical and sole legal custody of K.S. Father later filed a petition for rule to show cause and contempt citation, alleging that Mother violated the court's order and the Indiana Child Support Guidelines by failing, among other things, to pay her portion of K.S.'s health-care expenses and purchase K.S.'s clothing.

The trial court held a hearing regarding Father's petitions. On August 25, 2011, the trial court entered findings of fact and conclusions of law, in which it explained its consideration of each statutory factor regarding modification of custody generally. The court agreed with the parties that because they "live in different communities and different counties and because of the age of the child [four years old], continued joint physical custody is no longer a viable option." *Id.* at 75. Acknowledging that it had been "an extremely difficult [and] arduous process" for the court, *id.*, the trial court awarded primary physical custody to Mother but continued joint legal custody. The court, however, did not hold Mother in contempt or otherwise explicitly rule on Father's contempt petition.

Father now appeals.[1]

**Discussion and Decision**

On appeal, Father argues that the trial court erred in (1) modifying primary physical custody to Mother, (2) continuing joint legal custody, and (3) not holding Mother in contempt or explicitly ruling on his contempt petition.

---

[1] We heard oral argument on March 2, 2011, at Culver Cove Resort & Conference Center at the Indiana State Bar Association's 11th Annual Women's Bench Bar Retreat in Culver, Indiana. We thank counsel for their capable advocacy and retreat organizers and attendees for their hospitality.

# I. Modification of Custody

We review custody modifications for an abuse of discretion with a preference for granting latitude and deference to our trial judges in family law matters. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 456 (Ind. 2009). Also, as with all cases tried by the court without a jury, the trial court in this case entered special findings and conclusions thereon pursuant to Indiana Trial Rule 52(A). *See id.* In reviewing findings made pursuant to Trial Rule 52, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *K.I.*, 903 N.E.2d at 457. A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

## A. Physical Custody

Father contends that the trial court erred in modifying primary physical custody to Mother. Following establishment of paternity, "[t]he [trial] court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 . . . ." Ind. Code § 31-14-13-6.[2] Indiana Code section 31-14-13-2, in turn, sets forth the following factors:

---

[2] We note that the parties (and the trial court) relied on the wrong statutes. That is, they cited to the statutory provisions for modification of custody in a dissolution action, Indiana Code section 31-17-2-21, rather than the statutory provisions for modification of custody in a paternity action, Indiana Code section 31-14-13-6. Although the statutory citations are incorrect, the legal standards are nearly identical.

5

(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
   (A) the child's parents;
   (B) the child's sibling; and
   (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

The trial court entered the following, relevant findings:

19. The Court has considered each of the above quoted statutory factors.

20. There was no evidence concerning factors 3, 7, and 8.

21. Considering factor number 6; there was no evidence presented of any physical health issues and the only mental health evidence presented was anecdotal and the Court does not consider such evidence as significant except as stated previously above.

22. Factors 1 and 2 are relevant, but the Court's analysis of the factors does not favor either parent.

23. Therefore, this case rests on conclusions reached concerning factors numbered 4 and 5 and how they affect the best interests of the child.

24. The Court could state many positive things about each parent concerning the pivotal factors, but in the end the Court must find that the findings weigh more heavily toward one parent than the other.

* * * * *

26. The Court finds that after considering these 2 factors the best interests of the child support a finding that the mother should have primary physical custody of the child.

27. The above finding is supported because:

(A) Mother's support from and the closeness of her family,
(B) Her being willing to enroll the child in a school close to home. The Court does not accept the assertion and claim of the father that the school he has chosen is a significantly better quality school.
(C) Mother will keep the same doctor for the child that he has had since birth.[3]

Appellant's App. p. 77.

Father first argues that Mother's relocation without notice is the catalyst of the current custody dispute and therefore the legal doctrines of unclean hands and invited error preclude her from benefitting from the trial court's order by receiving primary physical custody (or joint or sole legal custody).[4] The unclean-hands doctrine is an equitable tenet that demands one who seeks equitable relief be free from intentional misconduct in the matter before the court. *Shriner v. Sheehan*, 773 N.E.2d 833, 847-48 (Ind. Ct. App. 2002), *trans. denied*. A party cannot seek an equitable remedy where a legal remedy exists which is "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *Martin v. Heffelfinger*, 744 N.E.2d 555, 559 (Ind. Ct. App. 2001). Father seeks modification of custody pursuant to statute and based on statutory factors. Because the legal remedy of custody modification is an adequate remedy, the unclean-hands doctrine does not apply.

---

[3] We find that the facts that Mother is willing to enroll K.S. in a school near her new home and take K.S. to a doctor near her new home do not support the conclusion that it is in K.S.'s best interests for Mother to have primary physical custody of him. Of course, Mother wants K.S. to go to school and the doctor in her community and not Father's.

[4] We note that Father's precise argument is that Mother's lack of notice of her relocation is the catalyst of this dispute. We disagree that this dispute arose because Mother failed to provide notice. The record indicates that Father knew about Mother's intentions to relocate no later than the trial court's July 15, 2010, order and that the present issue arose because of K.S.'s age and the parties' desire to enroll K.S. in school. Our discussion focuses on the corollary argument that Mother's relocation itself is the impetus for the present dispute.

7

Similarly, the doctrine of invited error does not apply. Father argues that Mother invited error by moving from Fort Wayne to Auburn without proper notice to him. Under this doctrine, "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005) (quotation omitted). Mother's failure to file a timely notice to move is not the type of error covered by this doctrine.

Father next argues that the trial court was required but failed to consider the factors listed in Indiana Code section 31-17-2.2-1(b) regarding relocation of a custodial parent. *See* Ind. Code § 31-14-13-10 (noting that in a paternity action, if an individual who has been awarded custody or parenting time intends to move the individual's residence, the individual must (1) file a notice of that intent with the clerk of the court that issued the custody or parenting-time order and (2) send a copy of the notice to each nonrelocating individual in accordance with Indiana Code chapter 31-17-2.2). Section 31-17-2.2-1 provides:

> (b) Upon motion of a party, the court shall set the matter [of a relocating individual's[5] intent to move] for a hearing to review and modify, if appropriate, a custody order . . . . The court shall take into account the following in determining whether to modify a custody order . . . :
> (1) The distance involved in the proposed change of residence.
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

---

[5] A "relocating individual" for purposes of Indiana Code chapter 31-17-2.2 means "an individual who has or is seeking: (1) custody of a child; or (2) parenting time with a child; and intends to move the individual's principal residence." Ind. Code § 31-9-2-107.5. "Relocation" for purposes of Indiana Code chapter 31-17-2.2 means "a change in the primary residence of an individual for a period of at least sixty (60) days." *Id.* § 31-9-2-107.7.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:
    (A) relocating individual for seeking relocation; and
    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

We acknowledge that Father did not file his motion to modify custody in direct response to a notice of intent to move by Mother because apparently she did not file such notice. But Father filed his motion to modify custody because of school disputes that arose because of Mother's relocation. The record indicates that Father sought to modify custody because of K.S.'s age and the parties' desire to enroll K.S. in a prekindergarten program. The parties' dispute over which school K.S. should attend and which community K.S. should live in is necessitated by Mother's relocation. Mother has the right to relocate herself. The issue when she does is whether her relocation warrants modification of custody. For this reason, we consider Father's petition to modify custody to be in response to Mother's relocation and therefore conclude that Section 31-17-2.2-1(b) applies. If we were to conclude that this section did not apply merely because Father's motion for modification was not filed directly in response to a notice of intent to move (which was not filed), that would indicate relocating parents may avoid application of this section by forgoing notice that is required by statute. We will not encourage behavior that obstructs the authority of the trial court to modify custody based on statutory factors rooted in the best interests of the child.

9

Upon concluding that Section 31-17-2.2-1(b) applies, we are persuaded by our legal conclusion in a factually similar case, *Wolljung v. Sidell*, 891 N.E.2d 1109 (Ind. Ct. App. 2008), that remand is necessary here. In *Wolljung*, we considered whether a trial court failed to consider the factors of Section 31-17-2.2-1(b) and thereby erred in modifying custody based solely on the factors of Section 31-17-2-8.[6] We noted an "interplay" and "overlap" between the custody-modification statute, Indiana Code section 31-17-2-21, and the relocation statutes, Indiana Code sections 31-17-2.2-1 through -6, and concluded that "both are in play and must be considered." *Id.* at 1113; *see also Baxendale v. Raich*, 878 N.E.2d 1252, 1256 (Ind. 2008) (stating that Section 31-17-2.2-1(b) provides "additional guidance" to a trial court when determining whether modification is appropriate). We concluded that while the relocation statutes do not require findings of fact, "there must be evidence in the record on each of the factors listed in Indiana Code Section 31-17-2.2-1(b)." *Wolljung*, 891 N.E.2d at 1113. Because the record did not demonstrate that the parties or the trial court "fully considered or took into account" these factors, we reversed the trial court's order (which was based solely on the factors of Section 31-17-2-8) and remanded with instructions for the trial court to conduct another hearing and to hear evidence on each factor of Section 31-17-2.2-1(b). *Id.*

We take the same action here. Accordingly, we reverse the trial court's order awarding primary physical custody to Mother and remand this case with instructions for the trial court to hold a new custody-modification evidentiary hearing and consider the

---

[6] We acknowledge that because this is a paternity case, the relevant statute here is Indiana Code section 31-14-13-2. But because the statutes are substantially similar, it does not affect our reliance on this case.

evidence regarding the factors listed in Section 31-17-2.2-1(b) in addition to those of Section 31-14-13-2.

## B. Legal Custody

Father contends that the trial court erred in maintaining joint legal custody of K.S. because the evidence presented demonstrates

> tension[], lack of communication, and lack of cooperation associated with the parties' joint legal custody arrangement. Even the parties agree that childrearing has become a battleground between them, as they are not able to reach consensus on fundamental issues such as child-rearing philosophies, religious beliefs, schooling, medical care, payment of expenses, and lifestyles.

Appellant's Br. p. 32. Accordingly, Father requests sole legal custody. Mother's appellate brief, however, suggests that she is satisfied with joint legal custody. Nevertheless, because Mother maintains that the trial court's order granting her primary physical custody should be affirmed, any change from joint to sole legal custody should be made in her favor, not Father's.

The considerations for a trial court contemplating joint legal custody following a determination of paternity are found in Indiana Code section 31-14-13-2.3(c)[7]: whether such an arrangement is in the best interest of the child, whether the parties have agreed to such an arrangement, the fitness and suitability of each person to such an arrangement, "whether the persons . . . are willing and able to communicate and cooperate in advancing the child's welfare," the wishes of the child with more consideration given to the child's wishes if the child is at least fourteen years old, whether the child has established a close

---

[7] Again, the parties incorrectly cite the joint legal custody statute that applies in dissolution proceedings, Indiana Code section 31-17-2-15. Although the statutory citations are incorrect, the legal standards are nearly identical.

and beneficial relationship with both persons, whether the persons live near each other and plan to continue to do so, and the nature of the physical and emotional environment of each person's home. Evidence regarding most of these considerations was presented to the trial court.

The trial court entered the following findings and conclusions relevant to the determination of legal custody:

3. The child is a very fortunate young person who has 2 parents who love and adore him and who both keenly want what is best for him even though they don't always agree on what that is or how to accomplish it.

4. The child has the benefit of close extended family from both parents.

* * * * *

8. If the child lives with his father, the plan would be for him to live in Fort Wayne, IN and attend Concordia Lutheran Schools, a private parochial school system.

9. If the child lives with his mother, the plan would be for [K.S.] to live in Auburn, IN and attend the DeKalb County Central United School District, the local public school system.

10. While the parents sharing of physical custody of the child has been going pretty well, there have been some bumps in the road regarding sharing legal custody.

11. The father tends to take a more direct and confrontational approach when dealing with the mother. He does share sufficient information, but, rather than negotiate issues, he is more firm that his way is the way it will be.

12. The mother tends to be more passive aggressive and non-confrontational. Rather than negotiating fully and openly with the father, or confronting him, she will act and then wait to see how the father reacts.

13. It would be better for the child if each parent negotiated fully and openly with the other in good faith.

12

14. Each parent has, at times, . . . valid views that the other is unwilling to acknowledge.

* * * * *

28. The Court, therefore, orders that the parents shall share joint legal custody of the child . . . .

* * * * *

31. The parents are ordered to complete the free on-line program ProudToParent.org . . . .

Appellant's App. p. 74-80.

It appears from the trial court's findings that the parents are not unable or unwilling to work together to co-parent K.S.; rather, they have just had "some bumps in the road," and as a result the trial court offered some guidance and renewed motivation to serve as co-parents. Mother and Father each testified that while she or he was trying to cooperate, the other parent was not. This suggests some modification in their approaches to communicate might improve the situation, and in fact the trial court offered advice to the parents on how they might modify their interactions with each other in order to improve their communication and cooperation.[8] The tone of the trial court's findings, the trial court's modest advice to each parent within its findings, and its order that the parents complete a program regarding cooperating for the sake of the child suggest the trial court's optimism that the parties *are* able to work together and have not reached the point where they cannot together make major decisions regarding K.S.'s best interests.

---

[8] While it may seem that we are minimizing the degree of conflict between Mother and Father, or even the possibility of deep conflict between ex-spouses over childrearing issues, we certainly do not intend to do so. Here we are simply evaluating what we believe to have been the trial court's findings in the context of the record. As stated, we have a strong preference for granting latitude and deference to trial courts in family law matters. *K.I.*, 903 N.E.2d at 457.

13

Nevertheless, Father argues that K.S.'s education is a fundamental issue upon which the parties cannot agree. Father testified he told Mother that K.S.

> needed to attend school and . . . suggested a couple of schools and . . . asked for her . . . input, you know, what schools she thought she would like him to go to. Um, she didn't respond and, uh, after asking her several times, her response was[,] "Well, I enrolled him in a school in Auburn."

Tr. p. 21. This testimony supports the trial court's finding that Mother and Father have different styles of communicating, which at least for some time did not work well to convey to each other their thoughts and intentions. This scenario, along with additional supporting facts, does not lead to an inference that the two are unable to work together for the best interests of K.S., nor does it lead to an inference that the two have fundamentally different views regarding K.S.'s education. The record contains considerable evidence that Father completed and documented substantial research regarding what school he believed to be best for K.S. and likewise evidence of his frustration and criticism of Mother for supposedly not having done similarly substantial research or reviewing what he completed and provided to her. The record also demonstrates, however, that the school which Mother chose is either of similar quality to the school which Father chose or the data Father provided is insufficient to compare the two. In any event, the trial court's weighing of the evidence and conclusive rejection of Father's assertion that his chosen school is of significantly better quality renders moot the issue of the parties' disagreement as to the education of K.S. for purposes of this review of the trial court's order regarding legal custody.

Father also argues that the parties' different religious beliefs constitute a fundamental issue which would pose a difficulty for joint legal custody. The trial court

14

did not explicitly enter findings of fact on this issue, but in our review of the record, the parties themselves do not actually view their beliefs as substantially different. While both attested to relatively recently beginning to attend church, Father at the Lutheran church which supports the school he chose for K.S. and Mother at a Nazarene church, neither could or did thoroughly articulate on the record how the beliefs or practices of these churches differ significantly from each other. We do not here impose our own opinion regarding the differences between these two churches; rather, we note the significance of the parties' failure to do so. The evidence does not suggest that the parties' religious views are so different that they would pose a problem for joint legal custody.

As to medical care, the parties do not disagree about any specific medical *care* of K.S., and the record does not suggest that K.S. has a medical condition which requires more or different care than the average child of his age. Their sole disagreement is who should be K.S.'s regular physician. Father wants K.S. to see a pediatrician in Fort Wayne who K.S. had allegedly been seeing for a couple of years, while Mother wants K.S. to see the doctor in Auburn who delivered him. The crux of this medical-care dispute is each parent advocating for the convenience of K.S.'s medical care to be permanently situated in his or her respective community. This is not a fundamental issue that would pose a problem for joint legal custody.

As to payment of expenses, Father argues that Mother has not been paying expenses required by a prior court order. This issue is more appropriately addressed by Father's contempt petition, which is addressed below. Mother's alleged delinquency in

15

paying expenses to Father is not a significant issue that would make joint legal custody unworkable.

Finally, regarding Father's criticism of Mother's "lifestyle," including her failure to complete college, reliance on her parents, and time spent partying or with her boyfriend, the trial court heard evidence both in support of and contrary to these allegations and deemed joint legal custody appropriate. The fact that Father views Mother in this fashion and disagrees with what he considers to be her lifestyle does not make a joint legal custody relationship unworkable.

In sum, as to legal custody, the determinative issue is whether the parties are unable or unwilling to communicate for the best interests of K.S. The trial court's findings suggest the trial court did not believe that the parties have reached this tipping point and therefore ordered continued joint legal custody. As with most matters concerning custody, "[w]e have no way of knowing whether this arrangement will work or not; only time can tell." *Walker v. Walker*, 539 N.E.2d 509, 513 (Ind. Ct. App. 1989). Based on the record, the trial court's order continuing joint legal custody is not clearly erroneous.

## II. Contempt

Finally, Father contends that the trial court erred in failing to find Mother in contempt or otherwise ruling on his contempt petition. Indirect contempt, or civil contempt, is the "willful disobedience of any lawfully entered court order of which the offender has notice." *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005) (emphasis omitted) (quotation omitted). The objective of a contempt citation is "not to punish but to

16

coerce action for the benefit of the aggrieved party.  Thus, any type of remedy in a civil contempt proceeding must be coercive or remedial in nature." *Mosser v. Mosser*, 729 N.E.2d 197, 199-200 (Ind. Ct. App. 2000) (citation omitted).  Where a court has declined to find a party in contempt, we may reverse "only where there is no rational basis for the trial court's action." *Heagy v. Kean*, 864 N.E.2d 383, 386 (Ind. Ct. App. 2007) (quotation omitted), *trans. denied*.  It is within the trial court's discretion to determine whether a person is in contempt of a court order.  *Id.*  Unless the judgment is against the logic and effect of the facts and circumstances and the reasonable inferences therefrom, the court acted within its discretion.  *Id.*; *see also Van Wieren v. Van Wieren*, 858 N.E.2d 216, 223 (Ind. Ct. App. 2006) (declining to "*require* the trial court to find a party to be in contempt where . . . the court has found that those actions fall short of necessitating contempt sanctions.").

Father's contempt petition alleged that Mother violated prior court orders by: (1) failing to pay certain controlled expenses and her portion of K.S.'s health-care expenses, (2) failing to notify Father of her new employment, (3) failing to extend to Father the right of first refusal when she is unable to care for K.S., (4) failing to timely file a notice of intent to move, and (5) failing to communicate or work with Father regarding childrearing issues.

Of Father's five allegations, contempt sanctions would not be appropriate regarding Mother's alleged failure to file notice of her intent to move or to notify Father of her new employment because Mother's alleged omission does not warrant coercive or remedial action.  *See Mosser*, 729 N.E.2d at 199-200.  In its order, the trial court

17

reiterated the parties' obligations to report future relocations or changes in employment or employment status.  Similarly, Mother's failure to offer Father the right of first refusal in the past does not call for coercive or remedial action at this point.  In addition, the trial court's findings and admonitions to each party regarding how they should strive to communicate with each other going forward makes unnecessary sanctions regarding Mother's alleged past failure to cooperate with Father.

However, the trial court's failure to explicitly address whether Mother failed to pay certain expenses required by a prior court order warrants further discussion.  If Mother did so fail, a contempt citation is one proper method for Father to seek recovery of those funds.  Father alleged:

> 5.  . . . [Mother] was ordered to pay the first Four Hundred Seventy-seven Dollars ($477.00) per year in uninsured health care expenses incurred by or on behalf of [K.S.] as well as other controlled expenses.
>
> 6.  Since the entry of this Order in July, 2010, [Mother] has refused to comply with her financial obligation to pay [K.S.]'s controlled expenses . . . .
>
> * * * * *
>
> 8.  Medical and dental expenses have been incurred on behalf of [K.S.] by [Father] since July 16, 2010.  Documentation of these expenses ha[s] been presented to [Mother].
>
> * * * * *
>
> 10.  Further, since the entry of this Court's Order on July 15, 2010, [Mother] has willfully refused and neglected to pay [K.S.]'s other controlled expenses.  Specifically, [Mother] has not purchased and provided [K.S.]'s clothing as required by the Indiana Child Support Guidelines . . . .

Appellant's App. p. 68-69.

18

The trial-court order Father refers to is part of the record, *id.* at 20-31, and Mother's failure to make such payments was at least alluded to on the record at the hearing. Accordingly, we remand with instructions for the trial court to enter an order addressing Father's contentions as to Mother's failure to pay these costs.

Affirmed in part, reversed in part, and remanded.

KIRSH, J., concurs.

RILEY, J., concurring in part, dissenting in part and remanding with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE PATERNITY OF K.S.,      )
                                         )

J.S. (Father),                       )
                                         )

    Appellant-Respondent,     )
                                         )

       vs.                 )     No. 17A03-1109-JP-438
                                         )

M.M. (Mother),                  )
                                         )

    Appellee-Petitioner.      )

**RILEY, Judge, concurring in part, dissenting in part and remanding**

I respectfully disagree with the majority's decision reached in the instant case. While I applaud the trial court's thoughtful and detailed consideration of Mother and Father's respective positions and despite this court's deference and latitude to a trial court's decision in family matters, my review of the record leaves me with a firm conviction that a mistake has been made. *Webb v. Webb*, 868 N.E.2d 589, 592 (Ind. Ct. App. 2007). Based on the evidence before me, I concur in result in the majority's decision with respect to K.S.'s primary physical custody, I dissent with respect to the joint legal custody, and I concur in the majority's ruling on Father's contempt petition.

## I. *Modification of Physical Custody*

In its discussion of K.S.'s physical custody, the majority focuses on Father's relocation argument as a vehicle to remand the cause for a hearing on the physical

custody dispute. While I do not condone Mother's action to ignore Father's statutory rights afforded by the Indiana relocation statute, it cannot be disputed that the main tenet of the parties' litigation revolves around the workability of the joint custody arrangement. For the reasons set forth below, I believe that joint custody is no longer viable between the parties and continuation of the arrangement is no longer in K.S.'s best interest. In this light, I agree with the majority's result to hold a new custody-modification evidentiary hearing.

However, a mere remand of the cause to the trial court without more firm instructions when determining primary custody ignores the reality of the instant situation. The trial court's attentive consideration of the parties' respective involvement with K.S. indicates two "parents who love and adore [K.S.] and who both keenly want what is best for him[.]" (Appellant's App. p. 74). Although the trial court emphasized the close relationship the child has with both of his parents and his extended family—in part due to the shared physical custody during the first four years of his life—the trial court only recommended visitation pursuant to the standard Indiana Parenting Time Guidelines. While the Parenting Time Guidelines provide courts with specific parenting times for a child of a given age, the Guidelines themselves clearly state that the purpose of these guidelines is to provide a model which may be adjusted depending upon the unique needs and circumstances of each family. *In re Paternity of C.H.*, 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *trans. denied.* In light of the special bond that exists between K.S. and

his respective parents, it might be advisable to deviate from the standard Guidelines and increase visitation in a manner that is conducive to the best interests of the minor child.[9]

## II. *Modification of Joint Legal Custody*

Despite the majority's seeming acceptance to institute a sole physical custody arrangement in a single parent, the majority optimistically approves the continuation of joint legal custody because K.S.'s parents just had "some bumps in the road" and with improved communication skills they will be able to cooperate "for the sake of the child." Slip op. p. 13. I do not share a similar optimism.

The fact that both parents may be suitable and capable legal custodians of their child does not make an award of joint custody appropriate. "Even two parents who are exceptions on an individual basis when it comes to raising their children should not be granted, or allowed to maintain, joint legal custody over the children if it has been demonstrated . . . that those parents cannot work and communicate together to raise the children." *Carmichael v. Siegel*, 754 N.E.2d 619, 636 (Ind. Ct. App. 2001). Indeed, to award joint legal custody to individually capable parents who cannot work together "is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Aylward v. Aylward*, 592 N.E.2d 1247, 1252 (Ind. Ct. App. 1992).

With their disagreements on potty-training, bedtime routines, medical providers, education, and religion, the parties have demonstrated their general inability to communicate and work together to raise this child. In reality, the evidence reveals that

---

[9] It goes without saying that, in order to minimize interpretation issues between the parties, strict instructions should be included with regard to transportation of the child for visitation matters.

the stakes are slowly being raised: whereas the differences initially involved the rather mundane issues such as toilet-training, now the disagreements center around items that will have a profound impact on K.S.'s life. Thus, despite each party acknowledging the other's love for K.S. and the fitness of each parent to care for him, childrearing has become a battlefield.

While the majority advances the continuation of a joint legal custody based on the *nature* of decisions Mother and Father make, I advocate for sole legal custody in a single parent because of the *method* of the parents' decision making. As succinctly noted by the trial court:

> 11. The [F]ather tends to take a more direct and confrontational approach when dealing with the [M]other. He does share sufficient information, but, rather than negotiate issues, he is more firm that his way is the way it will be.
>
> 12. The [M]other tends to be more passive aggressive and non-confrontational. Rather than negotiating fully and openly with the [F]ather, or confronting him, she will act and then wait to see how the [F]ather reacts.
>
> * * *
>
> 14. Each parent has, at times, ha[d] valid views that the other is unwilling to acknowledge.

(Appellant's App. p. 75). Regardless of the nature of the decision, Mother and Father's on-going battles are characterized by persistent patterns of behavior ingrained in the party's own personality. This cannot be changed by simply completing a free on-line program as ordered by the trial court. Although their attitudes towards decision making might improve temporarily after completing the program, it will only be a matter of time before each party reverts true to form and we will be called upon again to negotiate

23

between Mother and Father. The pitfall of awarding and maintaining a joint legal custody arrangement primarily to placate the parties, as done by the majority's decision, should be avoided as not in the best interests of the child. Based on the record, the trial court's order continuing joint legal custody is clearly erroneous. I would reverse the trial court's decision and remand with instruction to enter an award of sole legal custody in favor of either Mother or Father.