## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Dorothy Ferguson
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Edward Roberts, Jr., <br> *Appellant-Respondent,* <br><br> v. <br><br> Olivia L. Roberts, <br> *Appellee-Petitioner.* | October 24, 2019 <br><br> Court of Appeals Case No. 19A-DR-941 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable G. George Pancol, Judge <br><br> The Honorable Kevin M. Eads, Magistrate <br><br> Trial Court Cause No. 48C02-1412-DR-674 |

**Altice, Judge.**

## Case Summary

[1]     Olivia L. Roberts (Mother) filed a motion to modify custody, seeking physical custody of the parties' three minor children. The trial court granted her motion,

and Dennis E. Roberts, Jr. (Father) appeals, asserting that Mother failed to show a substantial change in circumstances as required to modify custody.

[2]     We affirm.

## Facts & Procedural History

[3]     Mother and Father married in March 2008. They have three children together: D.R. (born in May 2008), V.R. (born in October 2009), and R.R. (born in February 2013) (collectively, the Children). Mother filed a petition for dissolution in December 2014, seeking, among other things, custody of the Children. The trial court's April 2015 provisional order granted physical custody to Mother with Father having parenting time pursuant to Indiana Parenting Time Guidelines.

[4]     At some point in time that is not clear in the record, Mother entered into a relationship with a man who abused or harmed one or more of the Children. As a result, a Child in Need of Services (CHINS) action was opened and the Children were placed with Father while the dissolution was pending. Following a final hearing in the dissolution case, where the parties each appeared in person and with counsel, the trial court issued a dissolution order on March 21, 2016, placing custody of the Children with Father[1] and directing that Mother have "no less than the parenting time guidelines, once the

---

[1] The dissolution order states, "The custody of said children is placed with the Respondent Father" and does not distinguish between legal and physical custody. *Appellant's Appendix Vol. II* at 26.

restrictions of the CHINS case are lifted." *Appellant's Appendix Vol. II* at 26. Mother was also ordered to pay weekly child support. The Children were ages seven, six, and three at the time that the dissolution became final.

[5] In November 2016, Mother filed a verified motion to modify custody, seeking sole legal and physical custody of the Children and asserting that there had been a substantial change in circumstances warranting modification. *Id.* at 29. After a number of continuances, the matter came on for evidentiary hearing on November 13, 2018, which was completed at a second hearing on January 29, 2019.

[6] Mother testified that, when the parties' marriage was dissolved in March 2016, the CHINS action was pending and she was exercising supervised parenting time, and when the CHINS action was dismissed sometime during 2016, her parenting time changed to unsupervised every other weekend and on Wednesdays. According to Mother, she has provided all or almost all of the transportation to and from Father's residence for her parenting time, which at the time of the hearing was an hour each way.

[7] Mother expressed concern that Father "bounces" with the Children from residence to residence – having lived with three different women, and each time one relationship would end, he would temporarily move in with his family before moving in with the next woman – and that he and the three Children currently were living in a house with his girlfriend and her three minor children. *Transcript* at 37. Mother testified that when she picks up the Children for

parenting time, they sometimes smell like cigarette smoke, regularly have body odor, and often have a cough or some ailment, noting that one or more of the Children has asthma and uses an inhaler. Mother suspected that the respiratory problems were made worse by Father's smoking. Mother testified that Father does not advise her when he takes the Children to the doctor, and she does not know their doctor's name. Mother stated that on several occasions she went to the Children's elementary school so she could see their school records, but was told that she did not have access to the information and/or they did not have her on record as being a parent. Mother testified that Father will show her the Children's report cards when she is at his house for pick-up, but she does not get copies. While one or two of the Children have an IEP, Mother said that she had never been invited to an IEP conference. Mother said that she generally did not get updates from Father about how the children were doing in school, although she had concerns that they were not performing well.

[8] Mother also testified that she has not been allowed to have the Children on holidays and that she has to agree to what parenting time Father offers because, she explained, "any other way I won't see them." *Transcript* at 35. She also stated that Father does not advise or invite her to the Children's extracurricular events, although sometimes she is aware through the Children or their grandfather. She could not remember the last birthday that she spent with her Children. Mother testified that she was living in a two-bedroom apartment in Muncie and was working full-time, 10:00 a.m. to 7:00 p.m., for Walmart,

where she had been employed for three years. Mother stated that she was current on child support.

[9] Mother also called as a witness her mother (Grandmother), who testified that Mother always picks up and drops off the Children for visitations, that Father has not done so in two or three years, and that if Mother does not transport the Children, Mother "probably won't get to see them." *Id.* at 24. Grandmother also testified that the Children often have body odor and are wearing clothes that do not fit. Grandmother said that neither she nor Mother get to see the Children on holidays, as Father "has had them ever [sic] holiday," and they do not get to see the Children "on their exact birthday" so they plan a party for another day. *Id.* at 25, 31.

[10] Father presented the telephonic testimony of Jacob White, who was the Children's elementary school principal in New Castle. White testified that the Children were well-liked students, did not exhibit any behavioral problems, were appropriately dressed, and did not have what he considered to be attendance problems, although he acknowledged that as of the date of the November 13 hearing, D.R. (4th grade) had missed 6 and one-half days, V.R. (3rd grade) had missed eight, and R.R. (kindergarten) had missed five. When asked how the Children were doing in school, White said that D.R. was "doing well," has an IEP, and works hard. *Id.* at 10. When asked about how V.R. is doing, White said she is "the same" as D.R., giving her best effort, and is "pushing through" some issues with reading and is "doing a very nice job." *Id.* at 11. White was not aware as to whether Mother had contacted the school for

records. He testified that in his opinion any change in schools would be disruptive for the Children.

[11] Because there was not sufficient time to complete the hearing, the matter was continued, but before recessing, the court asked Father, under oath, some questions, and then issued an interim order directing, among other things, that: (1) Father make sure that Mother is listed on the school records "so that [] there is no question that she is [the] Mother" and is able to access information, (2) pursuant to the Parenting Time Guidelines, the upcoming Thanksgiving would be Mother's holiday with the Children, (3) the parties share responsibility for transportation for parenting time, with Mother picking up at start of the visit and Father picking up at the end of the visit, (4) Father take "further lengths to ins[u]late the Children" from his smoking, and (5) the parties communicate or confirm their parenting time arrangements by text message and preserve the messages for availability as evidence in a hearing. *Id*. at 73, 75.

[12] The matter resumed on January 29, 2019, at which time Mother called Father to testify. Father stated that in the approximately four years that he had had custody of the Children, he had moved three times. As of the time of the hearing, Father was living in New Castle in a two-bedroom residence with the Children, his fiancée, Brandy, and her three children. "All the girls" slept in one bedroom, he and Brandy slept in the other, and "the boys" slept in the front

room.[2]  *Id.* at 86.  At the time of the first hearing in November 2018, Father was working at Pizza King, but as of the January 2019 hearing, Father was employed at a company called KVK, working 6:00 a.m. to 6:00 p.m., alternating 36 and 48-hour weeks and earning $11.25 per hour.  He said that Brandy was not employed outside the home.  Father did not have a working cell phone of his own but was borrowing one from his father.

[13]  Father acknowledged that at no time since having been awarded custody of the Children had he possessed a driver's license and that in September 2018 he was charged with Class C misdemeanor driving without ever having received a license.  Father acknowledged that D.R. had some poor grades, but explained that D.R. had been diagnosed previously with some characteristics of autism – a diagnosis of which Mother indicated she was not aware – and was doing his best.  Father also acknowledged that V.R. currently had failing grades in reading, science, and math.  When asked if he was aware that, after the last hearing, Mother went to the elementary school and was still not able to see the Children's records, Father said that he was not aware.  He explained that, during the time of the CHINS proceeding there was a block put in place preventing Mother access, but when the CHINS proceeding was over, he called the schools to lift the block, so he "was not aware [that] there was anything on there blocking her" and "didn't know that was still on there."  *Id.* at 109-10.  He

---

[2] Father and Mother have two sons and a daughter, but the gender(s) and ages of Brandy's three children are not clear from the record.

continued, "[I]f there is still a problem . . . I will go in first thing . . . Friday," his next day off work, and "take care of that." *Id.* at 108-09.

[14] With regard to smoking, Father estimated that he smoked about a pack of cigarettes per day but was attempting to quit and using a vape pen, which he believed was helping. As to the Children's medical records and issues, Father acknowledged that he had not informed Mother of the Children's medical appointments – noting that "[Mother] hasn't asked either" – but stated that he had told her about any "major issue" with the Children's health. *Id.* at 87-88. With regard to the lack of a driver's license, Father stated that he had possessed a license some years ago in Virginia, had paid all outstanding fines associated with his pending charge, and was going to take the test within the month to obtain a license. Father testified to various activities that Children were involved in, including D.R. playing basketball through the Salvation Army, V.R. playing softball, and R.R. soon to be enrolled in karate. All three were involved in 4-H activities.

[15] After taking the matter under advisement, the trial court issued a custody order on February 4, 2019, ordering joint legal custody with primary physical custody with Mother and Father having parenting time as the parties agree but not less than that provided by the Parenting Time Guidelines, with transportation to be shared between the parties. The court identified factors that it considered in reaching its decision:

> The court finds that each parent has certain challenges. The
> court has been very favorably impressed with Father's steps to

address his smoking, as smoking was a complicating factor for the [C]hildren's asthma. However, the [C]hildren's grades, multiple homes over the past three years, the crowded condition of their current home, hygiene issues, and the difficulties in Mother having had appropriate access to school information and parenting time difficulties are factors in the court's decision.

*Appellant's Appendix Vol. II* at 47.

[16] Four days later, Father filed a Motion to Correct Error, asserting that the February 4 order, which "purported to" grant joint legal custody and primary physical custody to Mother, was erroneous in two respects: (1) it was invalid because it was signed only by the magistrate and not approved by the judge, and (2) it did not include any finding of a substantial change in circumstances that would warrant modification of custody. *Id.* at 51.

[17] The trial court held a hearing on Father's motion on March 26.[3] The court began the hearing by apologizing for the February 4 order, which it characterized as being "very unartful" and lacking the language customary for custody modifications regarding a change in circumstances, but the court emphasized that the faults in the order "were not indicative of the thought that went into the decision," assuring the parties that it had given the decision "very careful thought" and had reviewed its notes from the two days of hearings when

---

[3] The trial court also held a hearing on the motion to correct error on March 7, after which, on March 11, it approved the magistrate's February 4 order, rendering moot the issue concerning the validity of the order. The trial court referred the remaining motion to correct error issue to the magistrate for consideration, which matter was heard on March 26.

reaching a decision. *Transcript* at 157-58, 168. Father's counsel urged that the way to correct the order was to have a hearing for the limited purpose of determining what the substantial change was (if any), whether there was evidence presented on it, and how any alleged change relates to the factors outlined in Ind. Code § 31-17-2-8 that the court is to consider. Mother's counsel argued that Mother did not need to present evidence of "this is how it was and this is how it is," and, rather, she "just need[ed] to present evidence . . . that the condition of the kids today . . . with the other parent are no longer serving the children's best interest[,]" and that the trial court could draw inferences of the change. *Id.* at 163. Mother maintained that, in this case, evidence of change was presented in the form of the Children's grades, poor hygiene, and having to move to multiple homes while in Father's care, as well as Father's lack of a driver's license and appearing "almost resistant" to allow Mother access to school records or cooperating with parenting time. *Id.* at 163-64. Father urged that there must be evidence of a change, not just of current circumstances or indication that there are some things that Father could do better.

[18] On March 27, 2019, the trial court issued a revised custody order that included "corrected findings." *Appellant's Appendix Vol. II* at 13. The court observed that while neither party had requested specific findings, Father's motion to correct error posed the question as to "what substantial change has occurred in any of the factors listed under I.C. 31-17-2-8," and, in response to that, the court stated, in part:

The court did conclude, and does find, that there has been a substantial and continuing change in circumstances which renders it in the [C]hildren's best interest that physical custody be with Mother. Again, as no specific findings of fact were ever requested, the court will not make extensive individual findings now. However, the previously referenced grades [particular acknowledgement coming from Father as to [V.R.]'s poor grades in reading, math and science], Father's multiple homes over the past three years [three homes with an expressed possibility to relocate yet again], the crowded condition of Father's current two bedroom home [six children total with Father's live-in girlfriend's three], hygiene issues [body odor and cigarette smoke detected on the children by Mother and Maternal Grandmother and the court's observation of the same of Father in the courtroom], exposure of the [C]hildren to smoking in the home when [D.R.] and [R.R.] both suffer from asthma [although the court credited Father's testimony that he and his girlfriend smoked in a separate room from the [C]hildren and credits his further efforts to address his smoking], and the difficulties Mother experienced in lacking Father's cooperation with appropriate access to school information and parenting time were well established by the evidence.

* * *

In reaching its decision, the court did consider the factors listed in I.C. 31-17-2-8. . . . The difficulties over Mother's parenting time, the crowded conditions of Father's home, together with his multiple moves with the [C]hildren, the [C]hildren's hygiene issues, their school performance and the court's other observations noted previously all fit into the factors the court is directed to consider.

*Id.* at 14-15. As it had in the February 4 order, the trial court ordered that

Mother would have primary physical custody, with Father having parenting

time as agreed by the parties, but not less than that provided in the Guidelines, and the parties would share joint legal custody. Father now appeals.

## Discussion & Decision

[19] Father asserts that the trial court erred when it modified physical custody to Mother. In general, we review custody modifications for an abuse of discretion, with a preference for granting latitude and deference to our trial courts in family law matters. *Webb v. Webb*, 868 N.E.2d 589, 592 (Ind. Ct. App. 2007). We will not reverse unless the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Id*. Where, as here, neither party requested specific findings, but the trial court entered some findings and conclusions sua sponte, the specific findings control only with respect to the issues they cover, while a general judgment standard applies to issues outside the court's findings. *In re Marriage of Sutton*, 16 N.E.3d 481, 484-85 (Ind. Ct. App. 2014). The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.*

[20] A petitioner seeking modification of custody bears the burden of demonstrating that the existing custody arrangement should be altered. *Webb*, 868 N.E.2d at 592. Ordinarily, a trial court may not modify a child custody order unless (1) the modification is in the best interests of the child, and (2) there is a substantial change in one or more of the factors a court may consider under I.C. § 31-17-2-

8 (Section 8). *Id.* at 592-93 (citing I.C. § 31-17-2-21). Those factors include: the child's age and sex; the wishes of the parent(s); the child's wishes; the relationship the child has with his or her parent(s), sibling(s), and others; the child's adjustment to home, school, and community; the mental and physical health of all involved; and any evidence of domestic or family violence. I.C. § 31-17-2-8.

[21] Father concedes that there was evidence presented in support of "certain circumstances (bad grades, a crowded living environment, smoking in the home, etc.)", but argues that "there is a complete absence of evidence that these circumstances represent a change of any kind[,]" and because there was no evidence of a substantial change in circumstances, the custody modification was clearly erroneous. *Appellant's Brief* at 11-12. We disagree with his characterization of the evidence and his conclusion.

[22] The trial court expressly found that there had been a substantial and continuing change in circumstances and that modification was in the Children's best interests. The changed circumstances included the following: At or near the date of the November 2018 and January 2019 hearings, D.R. and V.R. had poor and failing grades in fourth and third grade, respectively. Father had moved residences at least three times in the approximately three years since the dissolution, and eight people were living in a two-bedroom residence. The Children exhibited poor hygiene and frequent illness when Mother picked them up for parenting time. Mother had been solely responsible for the transportation relative to her parenting time, and she had not exercised birthday

or holiday parenting time with them in several years because Father always had them on those occasions. Father had been charged in September 2018 with driving a vehicle without ever having obtained a license, and the matter was still pending in January 2019. These findings were supported by the evidence presented. To the extent that Father argues that "[the court] made absolutely no effort to compare these present circumstances to past circumstances, i.e., to mark a change[,]" *Appellant's Brief* at 11, we find there was sufficient evidence in this case from which the trial court could infer that the present circumstances represented a change.

[23] We also observe that, despite the fact that the trial court ordered Father at the November 2018 hearing to take steps to ensure that Mother had access to the Children's records at school, she was still not able to access them after the hearing, and there was no testimony that Father had contacted the school, as ordered, to remedy the situation. Indeed, Father's testimony at the second hearing reflected an unawareness of any problem – as if it had never been discussed – stating that he believed any block on Mother's access had already been resolved when the CHINS case was closed in 2016 and offering to take care of the matter on his next day off.

[24] As our Supreme Court has observed regarding our review of custody modifications, "'we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence[.]'" *In re Marriage*

*of Sutton*, 16 N.E.3d at 487 (quoting *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002)). The trial court here expressly determined that "[t]he difficulties over Mother's parenting time, the crowded conditions of Father's home, together with his multiple moves with the [C]hildren, the [C]hildren's hygiene issues, their school performance and the court's other observations . . . all fit into the factors [of Section 8] that the court is [] to consider[,]" in particular, the interaction and relationship of the child with the child's parent or parents, the child's adjustment to home, school, and community, and the mental and physical health of all individuals involved. *Appellant's Appendix Vol. II* at 15. We agree and find that the trial court's order modifying custody was not clearly erroneous. *See Webb*, 868 N.E.2d at 594 (affirming the trial court's determination that, where the two children, ages twelve and fourteen, had received, intermittently, failing grades in their regular academic classes, the failure of children to progress academically constituted a substantial change in circumstances that warranted modification).

[25] Judgment affirmed.

Brown, J. and Tavitas, J., concur.